**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

JESSE DELORENZO,

Plaintiff,

-against-

ANIA COFFEY, GREG COFFEY, KIRKOSWALD ASSET MANAGEMENT LLC, and GC MANAGEMENT US LLC d/b/a GC MANAGEMENT LLC,

Defendants.
-----------------------------------------------------------X

Case No. 1:24-cv-01735-JPO

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff JESSE DELORENZO ("DELORENZO" or "Plaintiff"), by his attorneys, Akin & Salaman, allege against Defendants ANIA COFFEY ("AC"), GREG COFFEY ("GC") (AC and GC, collectively, "the Coffey's" or "the individual defendants"), KIRKOSWALD ASSET MANAGEMENT LLC ("KAM"), GC MANAGEMENT US LLC d/b/a GC MANAGEMENT LLC ("GCM"), EXTENSIS III INC d/b/a EXTENSIS GROUP LLC ("EXTENSIS"), (KAM, GCM, and EXTENSIS collectively, "the Company") ( the individual defendants/the Coffey's and the Company collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Plaintiff DELORENZO was employed by Defendants as a private chef from August 27, 2021, to May 27, 2022. Despite DELORENZO working in excess of forty hours per week, Defendants failed to pay DELORENZO overtime.
2. Defendants maintained a pattern and practice of failing to pay DELORENZO the overtime rate of one-and-one half (1 ½) times his regular hourly wage rate for all hours worked in excess of 40 hours per week.
3. For the duration of his employment with Defendants, Defendants did not pay DELORENZO at all for any hours worked over 50 hours in a week.
4. This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay overtime wages, as required under state and federal law.

5. In addition to the aforementioned violations, Defendants also failed to furnish to Plaintiff a wage notice at the time of his hire and rehire, and, during the total period of his employment, Defendants failed to furnish Plaintiff with pay statements completely and accurately reflecting, *inter alia*, the hours he worked and pay he received.

6. Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiffs.

7. Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law § 190 *et seq*., ("NYLL"). Plaintiff seeks relief for Defendants' unlawful actions, including compensation for unpaid overtime wages, liquidated damages, statutory civil damages, pre- and post-judgment interest, and attorney's fees and costs, pursuant to the FLSA and NYLL.

8. Plaintiff further seeks to recover damages to redress the injuries he suffered as the result of being retaliated against by Defendants for complaining of Defendants' improper pay practices, in violation of 29 U.S.C. § 215(a) and NYLL § 215.

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) for causes of action brought under the FLSA, 29 U.S.C. § 201 *et seq*.

10. This Court has supplemental jurisdiction over the claims brought under New York State law pursuant to 28 U.S.C. § 1367, as the claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff JESSE DELORENZO**

13. At all times relevant to this action, DELORENZO was and is a resident of Bergen County, New Jersey.

14. From on or around August 27, 2021, until on or around May 27, 2022, DELORENZO was an employee of

Defendants under all applicable statutes.

15. DELORENZO was jointly employed by Defendants as a private chef from August 27, 2021 to May 27, 2022.

16. At all times during his employment with Defendants, DELORENZO was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

17. Specifically, while employed by Defendants, DELORENZO used ingredients produced outside the State of New York and transported via interstate commerce to Defendants' restaurant location in New York to prepare and cook food items sold to Defendants' customers. Additionally, DELORENZO used cleaning products and materials manufactured outside the state of New York and transported via interstate commerce to Defendants' restaurant location in New York to clean the kitchen.

18. During his employment with Defendants, DELORENZO was at all times subordinate to and under the direct supervision and control of AC and GC.

**Defendant KIRKOSWALD ASSET MANAGEMENT LLC**

19. KAM was and is a limited liability corporation incorporated in the United States of America, duly organized and existing under the laws of the State of New York.

20. At all times relevant to this action, KAM was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

21. KAM 's principal offices are located at 520 Madison Ave, Floor 25, New York, NY 10022.

22. At all times relevant to this action, KAM was and is a business or enterprise engaged in interstate commerce.

23. At all times relevant to this action, KAM has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

24. At all times relevant to this action, KAM is doing business as GMC.

25. At all times relevant to this action, KAM and GMC are the same entity.

26. KAM and/or GCM was and is a family office or company that handles the wealth management and household operations for the family of Defendant GC and Defendant AC ("the individual Defendants"), specifically KAM and/or GCM employs the individual Defendants' household staff, such as housekeepers,

drivers, assistants, and private chef (Plaintiff's position).

27. That at all times hereinafter mentioned, KAM exercised control over the employment terms and conditions of DELORENZO.

28. That at all times hereinafter mentioned, KAM had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of DELORENZO.

29. That at all times hereinafter mentioned, DELORENZO could complain to KAM directly regarding any of the terms of his employment, and KAM would have the authority to effect any changes to the quality and terms of DELORENZO'S employment.

30. That at all times herein relevant, KAM is an employer within the meaning of the FLSA and NYLL.

31. At all times relevant to this action, KAM was and is in a co-employer relationship with EXTENSIS.

32. At all times relevant to this action, KAM was and is in a co-employer relationship with GCM.

33. At all times relevant to this action, KAM was and is in a co-employer relationship with AC.

34. At all times relevant to this action, KAM was and is in a co-employer relationship with GC.

35. At all times relevant to this action, AC was and is an owner, shareholder, and/or principal of KAM.

36. At all times relevant to this action, GC was and is an owner, shareholder, and/or principal of KAM.

37. At all times relevant to this action, AC was and is an officer of KAM.

38. At all times relevant to this action, GC was and is an officer of KAM.

39. At all times relevant to this action, AC was and is an agent of KAM.

40. At all times relevant to this action, GC was and is an agent of KAM.

41. At all times relevant to this action, KAM operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

42. From on or around August 27, 2021, until on or around May 27, 2022, KAM was an employer of DELORENZO within the meaning of all applicable statutes.

43. As such, KAM's status as Plaintiff's employer is evidenced by a November 3, 2021 employment verification letter from Extensis HR that states "this letter is to inform you that the above individual

Jesse Delorenzo has been employed by Kirkoswald Asset Management LLC since 9/5/21…" and also discusses DELORENZO's compensation.

44. KAM's status as Plaintiff's employer is further evidenced by DELORENZO's the paychecks DELORENZO received from KAM which include on the paycheck KAM's entity name as well as their corporate address of 520 Madison Avenue, Floor 25 New York, NY 10022.

45. As such, the employment verification letter and paystubs, all taken together as well as separately establishes KAM's formal control and supervision over DELORENZO as their employee, more specifically that KAM had the power to hire and fire DELORENZO, supervised and controlled DELORENZO's work schedule and conditions of employment, determined DELORENZO's rate and method of payment, and maintained DELORENZO's employment records.

**Defendant GC MANAGEMENT US LLC**

46. GCM was and is a limited liability corporation incorporated in the United States of America, duly organized and existing under the laws of the State of New York.

47. At all times relevant to this action, GCM was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

48. GCM's principal offices are located at 520 Madison Ave, Floor 25, New York NY, 10022.

49. At all times relevant to this action, GCM was and is a business or enterprise engaged in interstate commerce.

50. At all times relevant to this action, GCM has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

51. GCM and/or KAM was and is a family office or company that handles the wealth management and household operations for the family of Defendant GC and Defendant AC ("the individual Defendants"), specifically GCM and/or KAM employs the individual Defendants' household staff, such as housekeepers, drivers, assistants, and private chef (Plaintiff's position).

52. That at all times hereinafter mentioned, GCM exercised control over the employment terms and conditions of DELORENZO.

53. That at all times hereinafter mentioned, GCM had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of DELORENZO.
54. That at all times hereinafter mentioned, DELORENZO could complain to GCM directly regarding any of the terms of his employment, and GCM would have the authority to effect any changes to the quality and terms of DELORENZO'S employment.
55. That at all times herein relevant, GMC is an employer within the meaning of the FLSA and NYLL.
56. At all times relevant to this action, GCM was and is in a co-employer relationship with KAM.
57. At all times relevant to this action, GCM was and is in a co-employer relationship with EXTENSIS.
58. At all times relevant to this action, GCM was and is in a co-employer relationship with AC.
59. At all times relevant to this action, GCM was and is in a co-employer relationship with GC.
60. At all times relevant to this action, AC was and is an owner, shareholder, and/or principal of GCM.
61. At all times relevant to this action, GC was and is an owner, shareholder, and/or principal of GCM.
62. At all times relevant to this action, AC was and is an officer of GCM.
63. At all times relevant to this action, GC was and is an officer of GCM.
64. At all times relevant to this action, AC was and is an agent of GCM.
65. At all times relevant to this action, GC was and is an agent of GCM.
66. At all times relevant to this action, GCM operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.00.
67. From on or around August 27, 2021, until on or around May 27, 2022, GCM was an employer of DELORENZO within the meaning of all applicable statutes.
68. At all times relevant to this action, Alyssa Mattera ("Mattera") was and is employed by GCM as GCM's Chief of Staff.
69. At all times relevant to this action, on or around March 25, 2022 and again in or around May or June of 2022, Mattera, in her capacity of Chief of Staff at GCM, wrote two employment verification letters on behalf of DELORENZO.

70. As such, GCM's status as Plaintiff's employer is evidenced by both employment verification letters, the first where Mattera states, "Mr. Delorenzo has been an employee of GC Management starting September 5, 2021 and continues to be an employee in good standing" and the second where Mattera states "I am writing to confirm Chef Jesse Delorenzo's employment with GC Management LLC spanning September 2021-May 2022. During his time as an employee, Jesse Provided the household [GC and AC] with high quality meals and dedicated service."

71. At all times relevant to these actions, the letter also provides information as to DELORENZO's compensation, eligibility for paid time off and other employment benefits, day to day duties, as well as feedback and interactions with GC and AC.

72. GCM's status as Plaintiff's employer is further evidenced by the employment contract GCM directly provided to DELORENZO; said employment contract explicitly names both GCM and GC as DELORENZO's employers and also outlines in explicit detail the conditions of DELORENZO's employment including but limited to duties, compensation, working hours, benefits, travel, breaks, expenses, paid time off, termination, and disputes.

73. GCM's status as Plaintiff's employer is further evidenced by DELORENZO's W2s and paychecks which list GCM as DELORENZO's employer

74. As such, the employment verification letters, employment contract, tax documents, and paystubs, all taken together as well as separately establishes GCM's formal control and supervision over DELORENZO as their employee, more specifically that GCM had the power to hire and fire DELORENZO, supervised and controlled DELORENZO's work schedule and conditions of employment, determined DELORENZO's rate and method of payment, and maintained DELORENZO's employment records.

**EXTENSIS III INC**

75. EXTENSIS was and is a foreign business corporation duly organized and existing under the laws of the State of New York.

76. At all times relevant to this action, EXTENSIS was and is a for-profit entity authorized to conduct business

pursuant to the laws of the State of New York.

77. EXTENSIS' principal offices are located at 900 Route 9 North, 3rd floor, Woodbridge NJ 07095.

78. EXTENSIS' principal offices are located at 28 Liberty Street, New York, NY, 10005.

79. At all times relevant to this action, EXTENSIS was and is a business or enterprise engaged in interstate commerce.

80. At all times relevant to this action, EXTENSIS has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

81. That at all times herein relevant, EXTENSIS is an employer within the meaning of the FLSA and NYLL.

82. At all times relevant to this action, EXTENSIS was and is in a co-employer relationship with KAM.

83. At all times relevant to this action, EXTENSIS was and is in a co-employer relationship with GCM.

84. At all times relevant to this action, EXTENSIS was and is in a co-employer relationship with AC.

85. At all times relevant to this action, EXTENSIS was and is in a co-employer relationship with GC.

86. At all times relevant to this action, AC was and is an owner, shareholder, and/or principal of EXTENSIS.

87. At all times relevant to this action, GC was and is an owner, shareholder, and/or principal of EXTENSIS.

88. At all times relevant to this action, AC was and is an officer of EXTENSIS.

89. At all times relevant to this action, GC was and is an officer of EXTENSIS.

90. At all times relevant to this action, AC was and is an agent of EXTENSIS.

91. At all times relevant to this action, GC was and is an agent of EXTENSIS.

92. At all times relevant to this action, EXTENSIS operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.00.

93. From on or around September 5, 2021, until on or around May 27, 2022, EXTENSIS was an employer of DELORENZO within the meaning of all applicable statutes.

**Defendant ANIA COFFEY**

94. AC, upon information and belief, was and is a resident of the State of New York.

95. Upon information and belief AC is the spouse of GC.

96. That at all times hereinafter mentioned, AC resides at the premises designed and more commonly known as 11 East 69th street New York, NY 10021.

97. That at all times hereinafter mentioned, AC exercised control over the employment terms and conditions of DELORENZO.

98. That at all times hereinafter mentioned, AC had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of DELORENZO.

99. That at all times hereinafter mentioned, DELORENZO could complain to AC directly regarding any of the terms of his employment, and AC would have the authority to effect any changes to the quality and terms of DELORENZO'S employment.

100. That at all times herein relevant, AC is an employer within the meaning of the FLSA and NYLL.

101. At all times relevant to this action, AC was and is in a co-employer relationship with KAM.

102. At all times relevant to this action, AC was and is in a co-employer relationship with GCM.

103. At all times relevant to this action, AC was and is in a co-employer relationship with GC.

104. At all times relevant to this action, AC was and is in a co-employer relationship with EXTENSIS.

105. That at all times relevant to this action, AC was a supervisor of DELORENZO.

106. AC is the owner, shareholder, and/or principal of the Company and is responsible for the day-to-day operations of the Company's business her family's household.

107. At all times relevant to this action, AC served as a principal, shareholder, officer, owner, agent, and/or manager of KAM.

108. At all times relevant to this action, AC served as a principal, shareholder, officer, owner, agent, and/or manager of GCM.

109. AC possesses or possessed an ownership interest in KAM and possessed and exercised operational control over and policy making authority within KAM.

110. AC possesses or possessed an ownership interest in GCM and possessed and exercised operational control over and policy making authority within GCM.

111. At all times relevant to this action, AC possessed and exercised the power and authority vested in her by KAM to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate employees' performance, and otherwise determine terms and conditions of the employment of KAM 's employees, including Plaintiff.

112. At all times relevant to this action, AC possessed and exercised the power and authority vested in her by GCM to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate employees' performance, and otherwise determine terms and conditions of the employment of GCM's employees, including Plaintiff.

113. Employees of KAM, including Plaintiff, could complain to AC directly regarding any of the terms of their employment, and AC would have the authority to effect any changes to the quality and terms of their employment.

114. Employees of GCM, including Plaintiff, could complain to AC directly regarding any of the terms of their employment, and AC would have the authority to effect any changes to the quality and terms of their employment.

115. The acts of KAM charged in this Complaint were authorized, directed or accomplished by AC individually, by herself or her agents, officers, employees or representatives, while actively engaged in the management of KAM.

116. The acts of GCM charged in this Complaint were authorized, directed or accomplished by AC individually, by herself or her agents, officers, employees or representatives, while actively engaged in the management of GCM.

117. AC is personally and jointly and severally liable for the violations of the FLSA and NYLL by KAM.

118. AC is personally and jointly and severally liable for the violations of the FLSA and NYLL by GCM.

119. AC is personally and jointly and severally liable for the violations of the FLSA and NYLL by EXTENSIS.

120. AC is personally and jointly and severally liable for the violations of the FLSA and NYLL by GC.

121. AC's status as Plaintiff's employer is evidenced by text messages between AC and DELORENZO where

AC explicitly directs DELORENZO as to his duties and schedule on a regular basis.

122. Said text messages evidence that AC was in constant control and supervision of DELORENZO schedule and conditions of his employment.

123. AC's status as Plaintiff's employer is further evidenced through the employment contract DELORENZO received from GCM which explicitly references the individual Defendants as DELORENZO's employers and memorializes extensively the employment relationship between DELORENZO and the individual Defendants including DELORENZO's schedule, duties, rate of pay and all other conditions of his employment.

**Defendant GREG COFFEY**

124. GC, upon information and belief, was and is a resident of the State of New York.

125. Upon information and belief GC is the spouse of AC.

126. That at all times hereinafter mentioned, GC resides at the premises designed and more commonly known as 11 East 69th street New York, NY 10021.

127. That at all times hereinafter mentioned, GC exercised control over the employment terms and conditions of DELORENZO.

128. That at all times hereinafter mentioned, GC had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of DELORENZO.

129. That at all times hereinafter mentioned, DELORENZO could complain to GC directly regarding any of the terms of his employment, and GC would have the authority to effect any changes to the quality and terms of DELORENZO'S employment.

130. That at all times herein relevant, GC is an employer within the meaning of the FLSA and NYLL.

131. At all times relevant to this action, GC was and is in a co-employer relationship with KAM.

132. At all times relevant to this action, GC was and is in a co-employer relationship with GCM.

133. At all times relevant to this action, GC was and is in a co-employer relationship with AC.

134. At all times relevant to this action, GC was and is in a co-employer relationship with EXTENSIS.

135. That at all times relevant to this action, GC was a supervisor of DELORENZO.

136. GC is the owner, shareholder, and/or principal of the Company and is responsible for the day-to-day operations of the Company's business.

137. At all times relevant to this action, GC served as a principal, shareholder, officer, owner, and/or manager of KAM.

138. At all times relevant to this action, GC served as a principal, shareholder, officer, owner, and/or manager of GCM.

139. GC possesses or possessed an ownership interest in KAM and possessed and exercised operational control over and policy making authority within KAM.

140. GC possesses or possessed an ownership interest in GCM and possessed and exercised operational control over and policy making authority within GCM.

141. At all times relevant to this action, GC possessed and exercised the power and authority vested in him by KAM to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate employees' performance, and otherwise determine terms and conditions of the employment of KAM 's employees, including Plaintiff.

142. At all times relevant to this action, GC possessed and exercised the power and authority vested in him by GCM to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate employees' performance, and otherwise determine terms and conditions of the employment of GCM's employees, including Plaintiff.

143. Employees of KAM, including Plaintiff, could complain to GC directly regarding any of the terms of their employment, and GC would have the authority to effect any changes to the quality and terms of their employment.

144. Employees of GCM, including Plaintiff, could complain to GC directly regarding any of the terms of their employment, and GC would have the authority to effect any changes to the quality and terms of their employment.

145. The acts of KAM charged in this Complaint were authorized, directed or accomplished by GC individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of KAM.

146. The acts of GCM charged in this Complaint were authorized, directed or accomplished by GC individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of GCM.

147. GC is personally and jointly and severally liable for the violations of the FLSA and NYLL by KAM.

148. GC is personally and jointly and severally liable for the violations of the FLSA and NYLL by GCM.

149. GC is personally and jointly and severally liable for the violations of the FLSA and NYLL by EXTENSIS.

150. GC is personally and jointly and severally liable for the violations of the FLSA and NYLL by AC.

151. GC's status as Plaintiff's employer is evidenced by text messages between GC and DELORENZO where GC explicitly directs DELORENZO as to his duties and schedule stating "Jesse you do not get to choose where you work… We [Defendants GC and AC] employed you with very clear set principles and conditions. You don't get to change them when you feel like it."

152. Said text messages are an example of how GC had the power to hire and fire DELORENZO, supervised and controlled DELORENZO's work schedule and conditions of employment, such involvement in DELORENZO's employment is in a manner that renders GC DELORENZO's employer.

153. GC's status as Plaintiff's employer is further evidenced by GC's Zelle payments directly to DELORENZO throughout the course of his employment.

154. Said Zelle payments are an example of how GC determined DELORENZO's rate and method of payment, such involvement in DELORENZO's employment is in a manner that renders GC DELORENZO's employer.

155. GC's status as Plaintiff's employer is further evidenced through the employment contract DELORENZO received from GCM which explicitly references the individual Defendants as DELORENZO's employers and memorializes extensively the employment relationship between DELORENZO and the individual defendants including DELORENZO's schedule, duties, rate of pay and all other conditions of his employment..

**Defendants Are Joint Employers of Plaintiff**

156. At all times relevant to this action, and as a matter of economic reality, Defendants were employers and/or joint employers of Plaintiff within the meaning of the FLSA and NYLL.

157. Facts that demonstrate that Defendants were Plaintiff's employers include:

a. Defendants all suffered or permitted Plaintiff to work.

b. Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff.

c. Defendants all simultaneously benefitted from Plaintiff's work.

d. Defendants each had either functional and/or formal control over the terms and conditions of Plaintiff's work.

e. Plaintiff performed work integral to each Defendant's operation.

f. Each Defendant had substantial control over Plaintiff's working conditions and over the unlawful policies and practices alleged herein.

158. Defendants' operations were interrelated and unified.

159. Defendants shared a common management and was centrally controlled and/or owned by Defendants.

160. For the duration of Plaintiff's employment with Defendants, KAM, GCM, and EXTENSIS at the Coffey's direction, controlled the terms and conditions of Plaintiff's employment.

161. By way of example, during Plaintiff's employment, the Coffey's paid Plaintiff's wages—in part—by issuing Plaintiff checks from KAM's, GCM's, and EXTENSIS' bank accounts. When Plaintiff was paid by business check from either KAM's, GCM's, and EXTENSIS', Defendants did not identify any specific work or tasks performed by Plaintiff that were in service of only the payor entity, and the payment made to Plaintiff did not correlate with any work performed by Plaintiff that could be ascribed to only the payor entity.

162. Defendants paid Plaintiff's wages, by issuing a payroll check to Plaintiff from KAM, GCM or EXTENSIS. For these payments, Defendants issued Plaintiff a W-2.

163. In making the payments to Plaintiff for his wages—whether by paycheck from KAM, by paycheck from GCM, paycheck check from EXTENSIS, via Zelle from AC, via Zelle from GC —Defendants did not

distinguish the source of payment to Plaintiff for the work performed for any individual entity. All payments made by Defendants to Plaintiff for his wages, regardless of the source, were for the work performed by Plaintiff at the any of the residences owned by the Coffey's, for the mutual benefit of all Defendants.

## FACTUAL ALLEGATIONS

164. On or about August 27, 2021, DELORENZO initially commenced employment with Defendants.

165. For the duration of his employment with Defendants, DELORENZO reported to work at the Coffey's main residence located at 11 East 69th Street, New York, NY 10021 ("the Manhattan Residence").

166. For the duration of his employment with Defendants, the Coffey's employed DELORENZO as their private chef.

167. For the duration of his employment with Defendants, DELORENZO was a non-exempt employee.

168. Throughout his employment with Defendants, while stationed at the Coffey's Manhattan Residence, DELORENZO worked Monday through Friday, from 6 AM until anywhere between 7 PM and 8:30 PM (13 to 14.5 hours per day), 65 to 72.5 hours per week, depending on the Coffey's needs.

169. Upon information and belief, DELORENZO worked approximately 40 weeks over the course of his employment with Defendants, specifically between August 2021 and May 2022.

170. Upon information and belief, DELORENZO worked in excess of 40 hours per week for every single one of the 40 weeks that DELORENZO was in the employ of Defendants.

171. Upon information and belief, DELORENZO worked 65 to 72.5 hours per week for 34 of the 40 weeks that he was employed by Defendants.

172. When DELORENZO accompanied the Coffey's on family trips to their Southampton Residence or Switzerland Residence, DELORENZO would additionally work Saturday and Sunday, from 7:30 AM to 8 PM (12.5 hours per day).

173. Upon information and belief, there were approximately 6 weeks out of the 40 weeks that DELORENZO worked for Defendants where he accompanied Defendants on a trip and thus worked an additional one to two days.

174. Upon information and belief, DELORENZO accompanied Defendants to their Southampton Residence on multiple occasions, including in or around August of 2021 for Labor Day, twice in or around April of 2022, and once in or around May of 2022, totaling approximately 4 weeks where DELORENZO worked 85 to 97.5 hours per week.

175. Upon information and belief, DELORENZO accompanied Defendants to their Switzerland Residence in or around the end of December 2021 and the beginning of January of 2022, totaling approximately 2 weeks where DELORENZO worked 85 to 97.5 hours per week.

176. For the duration of his employment with Defendants, Defendants did not pay DELORENZO the one-and-one-half (1 ½) overtime premium rate for each hour he worked beyond 40 hours in a week.

177. In fact, as evidenced by his paystubs, Defendants only paid Plaintiff for 50 hours per week at a regular pay rate of $54.00, even though Plaintiff consistently worked in excess of 50 hours each week.

178. For the duration of his employment with Defendants, Defendants did not pay DELORENZO at all for any hours worked over 50 hours in a week.

179. For the duration of his employment with Defendants, Defendants did not pay DELORENZO any additional pay when his shift or shifts exceeded 10 hours per day.

180. For the duration of his employment with Defendants, Defendants failed to keep accurate records of wages earned or hours worked by DELORENZO.

181. At the time of his hire, or at any point thereafter, for the duration of Plaintiff's employment with Defendants, Defendants failed to furnish DELORENZO with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

182. At the time of his hire, his rehire, or at any point thereafter, for the duration of Plaintiff's employment with Defendants, Defendants failed to furnish DELORENZO with a wage notice setting forth his rate of pay, exempt status, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for his employers' main offices or principal locations, or any allowances taken.

183. Defendants' failure to provide Plaintiff with complete and accurate wage statements as well as a wage notice has harmed Plaintiff monetarily, specifically by denying Plaintiff relevant information he needed to determine whether he was being underpaid and by how much.

184. Defendants' failure deprived Plaintiff of the ability to know how much compensation he was entitled to and led to the underpayment of wages for 40 weeks of work.

185. For the duration of DELORENZO's employment with Defendants, Defendants failed to correct their pay practices with respect to DELORENZO and bring them into compliance with federal and New York State law.

186. Such a failure on Defendants' part has caused Plaintiff to experience monetary harm.

187. This compensation scheme is a blatant, willful violation of the FLSA and NYLL.

188. Defendants did not endow DELORENZO with any independent managerial or creative authority over Defendants' employees or operations.

189. For the duration of his employment with Defendants, DELORENZO did not have the authority to hire or fire Defendants' employees, set their rates of pay or schedules, approve employee requests for sick or vacation days, or otherwise exercise control over the terms and conditions of Defendants' employees.

190. AC and GC are principles of both GCM and KAM, as is evidenced through written communication between Defendants and Plaintiff as well as documentation provided to Plaintiff from Defendants.

191. AC and GC had the authority to hire and fire DELORENZO.

192. AC and GC supervised and controlled every aspect of the conditions of DELORENZO's employment.

193. For example, for the duration of his employment with Defendants, DELORENZO had no independent authority to select vendors, unilaterally incur expenses on behalf of the Coffey's, create a menu, or otherwise make decisions of significance—either AC or GC had to be consulted beforehand; Extensive text message communication between Plaintiff and the individual Defendants evidence that the individual Defendants meticulously directed all of DELORENZO's actions within his role.

194. DELORENZO could not purchase items for the household or set the menu without AC's approval; AC directed DELORENZO on all aspects of the menu.

195. Upon hire, AC told DELORENZO the types of meals that were acceptable and expected routinely; AC dictated the ingredients or products to buy or use, how to store or handle leftovers, what groceries to buy, when to go grocery shopping or order supplies, what brands of food to purchase, what cleaning products to use, when to serve each meal, and what stores to shop at.

196. AC's express approval was required for every change to the menu, and she and GC frequently gave DELORENZO feedback and requests.

197. For the duration of DELORENZO's employment with Defendants, DELORENZO's primary duties and responsibilities entailed manual labor at either AC or GC's explicit direction, such as: preparing food for cooking; cooking the food; cleaning the kitchen; setting the table before each meal; clearing the table after each meal; preparing and cleaning up breakfast for AC and her children; preparing the Coffey children's school lunches; prepping, serving, and cleaning up AC's morning and afternoon tea and snacks; collecting tea trays from around the residence to clean; grocery shopping throughout the day; preparing, serving, cleaning up lunch for AC, company, or the rest of the family if they were home; baking for afternoon tea or the children; preparing, serving, cleaning up dinner for AC, GC, and their children; taking out the garbage; cleaning, organizing, and clearing the fridge and kitchen; collecting, washing, and drying dishes; attending to various errands when asked by AC including receiving mail and packages, moving furniture, driving to the Coffey's Southampton Residence to pick things up or drop things off, feeding and walking the dog in the mornings and evenings.

198. For the duration of his employment with Defendants, DELORENZO's weekly discussion with AC about the menu and purchase of kitchen items was the only non-manual labor performed by DELORENZO for Defendants.

199. For the duration of DELORENZO's employment with Defendants, Defendants never provided DELORENZO with meal breaks, and DELORENZO was forced to eat while working his shift.

200. For the duration of his employment, DELORENZO has little to no downtime during the workday as he was essentially on call to make tea, snack, run errands, move furniture, do shopping, bake with the children, and take the dog out.

201. AC and GC supervised, controlled, and dictated DELORENZO's schedule including direct DELORENZO as to when to come in earlier than his outlined schedule.

202. AC and GC's level of control over DELORENZO's schedule is evidenced in the daily communications via text messages between DELORENZO and the individual Defendants, where either AC or GC would specify any changes to DELORENZO's schedule, dictate when DELORENZO was expected to travel with them and work on the weekends.

203. Upon his hire, Defendants told DELORENZO that the position would require some international travel as well as travel to the family's house in the Hamptons; in reality the Coffey's expected DELORENZO to be "on call" and ready to go on an extended trip at the drop of a hat.

204. Frequently, the Coffey's only gave DELORENZO a few days notice for a trip; this was particularly frustrating because he was already expected to work demanding hours without being compensated with overtime pay.

205. On one occasion in January of 2022 the Coffey's demanded that DELORENZO work the weekend at their Hampton's Residence and DELORENZO refused due to an unforeseen conflict but offered to prepare catered food for the weekend ahead of time, GC refused to take no for an answer and continuously threatened DELORENZO.

206. In May of 2022 the Coffey's told DELORENZO they planned to spend the summer in Ibiza, Spain but they only required DELORENZO attend a total of 3 weeks of their trip and further explained DELORENZO would not be compensated for the time they were away thereafter.

207. DELORENZO explained that he was unable to spend that much time away from his mother who was experiencing serious health issues and that he could no longer work the long hours that the job entailed.

208. As such the Coffey's Family hired a replacement chef to go on the Ibiza trip with them and directed DELORENZO to train said individual.

209. On May 30, 2022, DELORENZO texted AC his availability to work but never received a response.

210. As such, DELORENZO was forced to accept his termination.

211. After and because of his complaints of Defendants' unlawful pay practices, Defendants retaliated against Plaintiff by terminating Plaintiff's employment and thereafter preventing him from receiving the unemployment benefits he was rightly due after his termination.

212. Defendants are currently engaging in an ongoing unemployment action against Plaintiff.

213. Defendants' violations of the FLSA and NYLL as relating to DELORENZO's employment with Defendants have been willful.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wage

214. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

215. By failing to pay Plaintiff at least the minimum wage for all hours worked, Defendants have violated and continued to violate the FLS, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. §§206 and 215 (a)(2).

216. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

217. Defendants' failure to pay at least the minimum wage for all hours worked caused Plaintiff to suffer loss wages and interest thereon.

218. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

219. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

220. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**New York Labor Law – Unpaid Minimum Wage**

221. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

222. By failing to pay Plaintiff at least the minimum wage for all hours worked, Defendants have violated and continued to violate the NYLL.

223. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff for all hours worked at, at least the minimum hourly wage.

224. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1),*et seq*.

**THIRD CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime Wages**

225. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

226. Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a) and employed DELORENZO.

227. Defendants were required to pay DELORENZO one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

228. Defendants failed to pay DELORENZO the overtime wages to which he was entitled under the FLSA.

229. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay DELORENZO overtime wages.

230. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

231. As a result of Defendants' willful violations of the FLSA, DELORENZO is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Overtime Wages**

232. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

233. Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay DELORENZO one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours he worked in excess of forty (40) hours per week.

234. Defendants failed to pay DELORENZO the overtime wages to which he is entitled under the NYLL.

235. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay DELORENZO overtime wages.

236. As a result of Defendants willful violations of the NYLL, DELORENZO is entitled to recover his unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Spread-of-Hours Pay**

237. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

238. Defendants have willfully failed to pay DELORENZO additional compensation of one hour's pay at the minimum hourly wage rate in all instances where DELORENZO worked more than 10 hours per day, in violation of NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

239. As a result of Defendants' willful violations of the NYLL, DELORENZO is entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Wage Theft Prevention Act Notice Violations**

240. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

241. NYLL § 195(1)(a) obligates every employer to: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

242. Defendants failed to provide Plaintiff with a wage notice compliant with NYLL § 195(1)(a) either at the time of his initial hire or at the time of his rehire.

243. Due to Defendants' violations of NYLL§ 195(1), Plaintiff is entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 for each period of employment, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b).

244. Defendants violated NYLL § 195(3) by failing to furnish Plaintiff, with each payment of wages, an accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

245. Through their failure to provide Plaintiff with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

246. Due to Defendants' violations of NYLL § 195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide him with accurate wage statements, up to a maximum of $5,000 for each period of employment, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

**SEVENTH CAUSE OF ACTION**
**Fair Labor Standards Act – Recording Keeping Violations**

247. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

248. At all times relevant to this action, Defendants were and are required to establish, maintain, and preserve, for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of commencement of and cessation of work performed by each employee. 29 C.F.R. Part 516.

249. Defendants violated the applicable FLSA provisions by, *inter alia*, not maintaining and preserving Plaintiff's time of commencement of and cessation of work performed for Defendants and the pay received by Plaintiff.

**EIGHT CAUSE OF ACTION**
**New York Labor Law – Recording Keeping Violations**

250. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

251. At all times relevant to this action, Defendants were and are required to establish, maintain, and preserve, for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of commencement of and cessation of work performed by each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

252. Defendants violated the applicable NYLL and NYCRR provisions by, *inter alia*, not maintaining and preserving Plaintiff's time of commencement of and cessation of work performed for Defendants and the pay received by Plaintiff.

**NINTH CAUSE OF ACTION**
**Fair Labor Standards Act – Retaliation**

253. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

254. Plaintiff was an employee of Defendants within the meaning of the FLSA.

255. Defendants were employers of Plaintiff within the meaning of the FLSA.

256. 29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

257. While employed by Defendants, Plaintiff complained to Defendants repeatedly about Defendants' unlawful employment practices.

258. Plaintiff's complaints constitute protected activity under the FLSA.

259. After and as a result of his complaints of Defendants' unlawful pay practices, Defendants retaliated against Plaintiff by terminating Plaintiff's employment and by proceeding with an unemployment action against Plaintiff preventing him from receiving the full amount of unemployment insurance and disability benefits to which he was entitled.

260. A causal connection exists between Plaintiff's complaints of Defendants' unlawful pay practices and Defendants terminating his employment, and proceeding with an unemployment action against Plaintiff preventing him from receiving the full amount of unemployment insurance and disability benefits to which he was entitled.

261. Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff's employment, and by and proceeding with an unemployment action against Plaintiff preventing him from receiving the full amount of unemployment insurance and disability benefits to which he was entitled, in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

262. Due to Defendants' violations of 29 U.S.C. § 215(a)(3), Plaintiff is entitled to recover from Defendants his lost wages and other compensatory damages, liquidated damages in an amount equal to his lost wages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

**<u>TENTH CAUSE OF ACTION</u>**
**New York Labor Law – Retaliation**

263. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

264. Plaintiff was an employee of Defendants within the meaning of the NYLL.

265. Defendants are employers of Plaintiff within the meaning of the NYLL.

266. NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

267. While employed by Defendants, Plaintiff complained to Defendants repeatedly about Defendants' unlawful employment practices.

268. Plaintiff's complaints to Defendants constitute protected activity under NYLL § 21.

269. A causal connection exists between Plaintiff's complaints of Defendants' unlawful pay practices and and Defendants terminating his employment, and proceeding with an unemployment action against Plaintiff preventing him from receiving the full amount of unemployment insurance and disability benefits to which he was entitled.

270. Defendants violated NYLL § 215 by and Defendants terminating his employment, and proceeding with an unemployment action against Plaintiff preventing him from receiving the full

amount of unemployment insurance and disability benefits to which he was entitled, in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

271. Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages and liquidated damages, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Declaring that the practices complained of herein are unlawful under applicable state and federal law;

B. Declaring that Defendants are joint employers of Plaintiff under the FLSA and NYLL;

C. Declaring that Defendants have violated the minimum wage provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

D. Declaring that Defendants violated the overtime provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

E. Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

F. Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

G. Declaring that Defendants violated the record keeping provisions of the FLSA, NYLL and New York State Department of Labor Regulations;

H. Declaring that the Defendants violated the anti-retaliation provisions of the FLSA and NYLL after and because Plaintiff complained of and/or opposed Defendants' unlawful pay practices, policies and procedures;

I. Declaring that Defendants' violations of the FLSA and NYLL were willful;

J. Awarding Plaintiff unpaid overtime wages;

K. Awarding Plaintiff unpaid spread-of hours compensation;

L. Awarding Plaintiff liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

M. Awarding Plaintiff statutory penalties for Defendants' failure to furnish wage notices and/or complete and accurate wage statements pursuant to the NYLL;

N. Awarding Plaintiff compensatory damages, pursuant to the FLSA and NYLL, retroactive to the date of his termination, for all lost wages and benefits sustained as a result of Defendants' retaliatory

conduct after and because of Plaintiff's complaints of and/or opposition to Defendants' unlawful pay practices;

O. Awarding Plaintiff liquidated and/or punitive damages, pursuant to the FLSA and NYLL, for Defendants' violations of those statutes as a result of Defendants' retaliatory conduct after and because of Plaintiff's complaints of and/or opposition to Defendants' unlawful pay practices;

P. Awarding Plaintiff reasonable attorney's fees, costs, and expenses incurred, pursuant to the FLSA and NYLL;

Q. Awarding Plaintiff pre-judgment and post-judgment interest, pursuant to the FLSA and NYLL;

R. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: July 29, 2024
New York, New York

**AKIN & SALAMAN PLLC**

*/s/ Kayla S. Callahan*

Kayla S. Callahan, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400

*Attorneys for Plaintiff*