UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE DELORENZO,

                Plaintiff,

      -v-

ANIA COFFEY, *et al.*,

                Defendants.

24-CV-1735 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Jesse DeLorenzo brings this action against Defendants Ania Coffey, Greg Coffey, Kirkoswald Asset Management LLC ("Kirkoswald"), and GC Management LLC ("GC Management"), alleging that he was underpaid and denied documentation for the hours he worked as a private chef for the Coffeys, in violation of the Fair Labor Standards Act of 1938, as amended (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law (NYLL), N.Y. Lab. L. §§ 190, *et seq.*, §§ 663 *et seq.*

Before the Court is Defendants' motion to dismiss the action for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1). For the reasons that follow, Defendants' motion is granted in part and denied in part.

I.    **Background**

A.    **Factual Background**

The following facts are drawn from the allegations in DeLorenzo's amended complaint (ECF No. 34 ("AC")), which are presumed true for the purpose of resolving this motion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

DeLorenzo was employed as the Coffeys' private chef "from August 27, 2021, to May 27, 2022." (AC ¶ 1.) DeLorenzo's job usually entailed grocery shopping, preparing meals,

serving meals, cleaning the kitchen, "attending to various errands" when specifically asked, and "feeding and walking the dog," all at the Coffeys' "explicit direction." (*Id.* ¶ 197.) DeLorenzo alleges that the Coffeys "supervised and controlled every aspect" of his employment as their chef, including which items he could purchase and from which stores, "the types of meals that were acceptable and expected routinely," "how to store or handle leftovers," and other logistical details. (*Id.* ¶¶ 193-95.) Ania Coffey had to give DeLorenzo "express approval" for any menu changes, and she and Greg Coffey "frequently gave DeLorenzo feedback and requests." (*Id.* ¶ 196 (capitalization altered).)

DeLorenzo's usual schedule was to work "Monday through Friday, from 6 AM until anywhere between 7 PM and 8:30 PM" at the Coffeys' home in Manhattan. (*Id.* ¶ 168.) DeLorenzo alleges that he worked this schedule, which would add up to 13 to 14.5 hours a day and 65 to 72.5 hours a week, "for 34 of the 40 weeks that he was employed by Defendants." (*Id.* ¶ 170.)

For the remaining approximately six weeks of his tenure working for the Coffeys, DeLorenzo "accompanied Defendants on a trip and thus worked an additional one to two days." (*Id.* ¶ 173.) DeLorenzo alleges that the Coffeys "expected DeLorenzo to be 'on call' and ready to go on an extended trip at the drop of a hat." (*Id.* ¶ 203 (capitalization altered).) DeLorenzo traveled with the Coffeys to their Southampton home four different times, "including in or around August of 2021 for Labor Day, twice in or around April of 2022, and once in or around May of 2022." (*Id.* ¶ 174.) During those visits, he would work "85 to 97.5 hours per week." (*Id.*) DeLorenzo also traveled with the Coffeys to their home in Switzerland for two weeks "in or around the end of December 2021 and the beginning of January of 2022," during which time he also worked "85 to 97.5 hours per week." (*Id.* ¶ 175.)

Throughout the forty weeks he worked for the Coffeys, DeLorenzo was paid "for 50 hours per week at a regular pay rate of $54.00," regardless of how many hours he had worked that week.  (*Id.* ¶ 177.)  The Coffeys never paid DeLorenzo an overtime rate for the hours he worked over forty hours per week, and he was never paid "at all" for the hours he worked beyond the fifty compensated hours per week.  (*Id.* ¶¶ 176-79.)  Nor did the Coffeys provide DeLorenzo with "a wage notice" or periodic "accurate and complete statement[s]" of the hours he worked, his rate of pay, or how his compensation was calculated.  (*Id.* ¶¶ 181-82.)

In one instance, in January 2022, the Coffeys "demanded that DeLorenzo work the weekend at their Hampton's Residence" but DeLorenzo "refused due to an unforeseen conflict." (*Id.* ¶ 205 (capitalization altered).)  However, Greg Coffey "refused to take no for an answer and continuously threatened DeLorenzo."  (*Id.* (capitalization altered).)

In May 2022, the Coffeys told DeLorenzo that they would be spending the summer in Ibiza, Spain, and required DeLorenzo to spend three weeks there with them.  (*Id.* ¶ 206.) However, DeLorenzo was told he would not be compensated "for the time they were away thereafter."  (*Id.*)  DeLorenzo told the Coffeys that his mother "was experiencing serious health issues," so "he could no longer work the long hours that the job entailed."  (*Id.* ¶ 207.) DeLorenzo was then instructed to train a "replacement chef" who traveled with the Coffeys to Ibiza instead.  (*Id.* ¶ 208.)  On May 30, 2022, DeLorenzo texted Ania Coffey "his availability to work," but he never received a reply.  (*Id.* ¶ 209.)  That was how DeLorenzo learned of his termination.  (*Id.* ¶ 210.)

DeLorenzo alleges that as a result "of his complaints of Defendants' unlawful pay practices," he was terminated and "Defendants . . . engag[ed] in an ongoing unemployment action against [him]" to prevent him from receiving unemployment benefits.  (*Id.* ¶¶ 211-12.)

### B. Procedural History

DeLorenzo commenced this action on March 6, 2024 (ECF No. 1) and filed the operative complaint for this motion on July 29, 2024 (AC). Defendants collectively moved to dismiss the amended complaint on August 19, 2024. (ECF No. 39.) DeLorenzo opposed the motion on October 4, 2024 (ECF No. 47 ("Opp.")), and Defendants replied in further support of their motion on November 1, 2024 (ECF No. 48).

## II. Legal Standard

### A. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### B. Standing

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[U]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). To survive a Rule 12(b)(1) motion, "the party asserting subject matter jurisdiction has

the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quotation marks and citation omitted).

## III.   Discussion

Defendants first argue that the FLSA and NYLL do not apply to the Coffeys or to Kirkoswald because none of them qualifies as an "employer" under either statute.  Defendants next contend that DeLorenzo has failed to state claims for overtime, minimum wage, spread-of-hours, retaliation, and recordkeeping.  Finally, they assert that the Court lacks jurisdiction to adjudicate DeLorenzo's NYLL wage notice and recordkeeping claims because DeLorenzo lacks constitutional standing to bring such a claim.  The Court addresses each of these arguments and then turns to DeLorenzo's request to replead any deficient claims.

### A.    Employer Status

As a threshold matter, Defendants contend that the duties enumerated in the FLSA and the NYLL do not apply to the Coffeys or to Kirkoswald because they do not qualify as "employers" under either statute.  (ECF No. 40 ("Mem.") at 14.)

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Supreme Court has interpreted the FLSA's coverage broadly, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992), and has directed lower courts to look to "economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity," in determining an employer's status.  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citations and quotation marks omitted).  To do this, courts must consider: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotation marks omitted).

Multiple persons or entities may qualify as "joint employer[s]" under the FLSA so long as each employer individually satisfies the economic realities balancing test. *Barfield*, 537 F.3d at 144. However, not every one of these elements must be met in order for a person or entity to qualify as an employer. *See id.* at 143; *Irizarry v. Catsimatidis*, 722 F.3d 99, 116-17 (2d Cir. 2013) (holding that an individual was an employer under the FLSA even though he did not meet the second and fourth prongs of the *Carter* test).

While New York state courts analyzing employer status under the NYLL have traditionally "focuse[d] more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation," in practice "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923, 924 (S.D.N.Y. 2013) (citations and quotation marks omitted). The Court thus analyzes employer status under the two statutes together.

DeLorenzo has alleged sufficient facts showing that both Kirkoswald and the Coffeys meet enough of the requirements of the economic realities test to be considered liable employers. DeLorenzo alleges that he received an "employment verification letter" on November 3, 2021, stating that "this letter is to inform you that the above individual Jesse Delorenzo [sic] has been employed by Kirkoswald Asset Management LLC since 9/5/21." (AC ¶ 43.) Further, the paychecks DeLorenzo received were from Kirkoswald and included Kirkoswald's "entity name as well as their corporate address." (*Id.* ¶ 43.) Such consistent documentation from Kirkoswald

indicates that the company determined the rate and method of DeLorenzo's payment and maintained the employment records necessary to pay someone on a consistent schedule.

DeLorenzo alleges that both Ania and Greg Coffey had significant control over his schedule, his status as their private chef, and the conditions under which he worked. DeLorenzo references texting Ania Coffey "his availability to work," indicating that Ania was at least in part in charge of setting his hours. (*Id.* ¶ 209.) Further, both Coffeys would tell DeLorenzo when he was expected to travel with them and work weekends, one example being their demand that DeLorenzo work at least three weeks in Ibiza during the summer of 2022. (*Id.* ¶ 206.)

It is also abundantly clear from the allegations that the Coffeys were able to decide whether DeLorenzo would continue to be employed as their private chef. DeLorenzo specifically references a text message in which Greg Coffey told him: "Jesse you do not get to choose where you work . . . We employed you with very clear set principles and conditions. You don't get to change them when you feel like it." (*Id.* ¶ 151.) And after DeLorenzo told the Coffeys he could not go to Ibiza for the summer, it was Ania Coffey who cut off communication, resulting in his termination. (*Id.* ¶¶ 207-10.)

Finally, both Coffeys significantly controlled DeLorenzo's working conditions and his schedule while on the job. DeLorenzo alleges that Ania Coffey dictated the meals he could make, the ingredients and brands he could buy, the storage of leftovers, the stores where he could shop, the cleaning supplies he could use, and when to serve meals. (*Id.* ¶¶ 194-95.) Additionally, both Coffeys would give DeLorenzo "explicit direction" on the many daily tasks he had to do, including "attending to various errands when asked by [Ania Coffey] including receiving mail and packages, moving furniture, driving to the Coffey's Southampton Residence

to pick things up or drop things off, [and] feeding and walking the dog in the mornings and evenings." (*Id.* ¶ 197.)

Because DeLorenzo has adequately alleged sufficient authority and control by both Kirkoswald and the Coffeys to satisfy the standards for employers under the FLSA and NYLL, Defendants' motion is denied on this ground.

### B.    Overtime Wages

Defendants move to dismiss DeLorenzo's FLSA and NYLL claims that he was not paid overtime wages, arguing that DeLorenzo "failed to provide sufficient detail" about the overtime hours he worked to survive a 12(b)(6) motion. (Mem. at 22.)

Both the FLSA and the NYLL's enforcing regulations provide that an employer shall pay an employee "one and one-half times" the employee's "regular rate at which he is employed" for every hour he works over forty hours a week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. "So, to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). To do this, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). However, so long as a plaintiff "draw[s] on their memory and experience" to provide concrete details of their overtime work, a plaintiff is "not required to keep careful records and plead their hours with mathematical precision." *Bustillos v. Acad. Bus, LLC*, No. 13-CV-565, 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014).

DeLorenzo meets his burden. Rather than "[a] general statement that Plaintiff 'sometimes' worked more than a standard workweek," *Mendoza v. Cornell Univ.*, 20-CV-2110, 2021 WL 918622, at *3 (S.D.N.Y. Mar. 10, 2021), DeLorenzo states definitively that every one

of the thirty-four weeks he was not traveling with the Coffeys, he worked "Monday through Friday, from 6 AM until anywhere between 7 PM and 8:30 PM."  (AC ¶ 168.)  This adds up to 65 to 72.5 hours a week, well above the overtime limit.

DeLorenzo further alleges that for the approximately six weeks when he "accompanied [the Coffeys] on a trip," he additionally worked at least one weekend day.  (*Id.* ¶ 173.) DeLorenzo specifies that he traveled with the Coffeys to their Southampton residence four different times, "including in or around August of 2021 for Labor Day, twice in or around April of 2022, and once in or around May of 2022."  (*Id.* ¶ 174.)  And he asserts that during those visits, he would work "85 to 97.5 hours per week."  (*Id.*)  DeLorenzo also specifically states that he traveled with the Coffeys to their home in Switzerland for two weeks "in or around the end of December 2021 and the beginning of January of 2022," during which time he also worked "85 to 97.5 hours per week."  (*Id.* ¶ 175.)

DeLorenzo has thus pleaded adequate facts to "support a reasonable inference that [he] worked more than forty hours in a given week," and so Defendants' motion to dismiss his FLSA and NYLL overtime claims is denied.  *Cf. Nakahata*, 723 F.3d at 201.

### C.    Minimum Wage

Defendants next move to dismiss DeLorenzo's minimum wage claims under both the FLSA and the NYLL, arguing that because DeLorenzo was paid higher than state and federal minimum wage, these protections do not apply to him.

The FLSA, as amended, set the federal minimum wage at "$7.25 an hour" for the months during which DeLorenzo was employed as the Coffeys' private chef.  29 U.S.C. § 206(a)(1)(C). And the NYLL set the minimum wage for New York City employees at $15.00 at that time. N.Y. Lab. L. § 652(1)(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1).  Ultimately, under both the FLSA and the NYLL, "no minimum wage violation occurs so long as the total

wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 712 (S.D.N.Y. 2022) (citing the rule set out in *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)); *see also Alfonso v. Mougis Logistics Corp.*, No. 21-CV-5302, 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021) ("[T]he pertinent question is whether the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable . . . minimum wage." (quoting *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242-43 (S.D.N.Y. 2015))).

DeLorenzo alleges that he was paid $54.00 an hour for fifty-hour weeks (even when he worked more than fifty hours a week) (AC ¶ 177), which would total to $2,700 a week. Defendants are correct that dividing this sum by even DeLorenzo's highest alleged weekly hours worked, 97.5 (*id.* ¶¶ 174-75), would still equal over $27 an hour, which is well above either the federal or local minimum wage. (Mem. at 21.)

Because DeLorenzo has not alleged that his hourly rate for the hours he actually worked ever fell below minimum wage, Defendants' motion to dismiss these claims under the FLSA and NYLL is granted.

### D.    Spread-of-Hour Pay

Defendants move to dismiss DeLorenzo's NYLL spread-of-hours claim, arguing that only employees earning minimum wage qualify to bring such a claim. (Mem. at 23.)

"Under [New York City Department of Labor ('DOL')] regulations, employers are required to pay a 'spread of hours' premium of 'one hour's pay at the basic minimum hourly wage rate' to a covered employee who works a shift of more than 10 hours." *Andryeyeva v. N.Y. Health Care, Inc.*, 33 N.Y.3d 152, 169 n.2 (N.Y. 2019) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a)). DeLorenzo concedes that this Court's holding in *Malena v. Victoria's*

*Secret Direct, LLC*, that "New York's spread-of-hours law does not apply to plaintiffs who earned substantially more than the minimum wage," 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012), "on its face is correct" (Opp. at 11-12).  However, DeLorenzo argues that he should qualify under the exception to that rule for "all employees in restaurants and all-year hotels."  (*Id.* at 12 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d)).)

Though DeLorenzo undoubtedly works in the culinary world, his job as a private chef does not fall under the DOL regulation's definition of "restaurant."  The regulation states:

> The term restaurant includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto.  The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1(b).  DeLorenzo did not work for an "eating or drinking place that prepares and offers food or beverage for human consumption . . . to the public, to employees, or to members or guests of members."  *Id.*  Rather, he worked in a private home serving a single family.  It stretches the statutory and regulatory text too far to read DeLorenzo as a covered restaurant employee.[1]  Defendants' motion to dismiss this claim is therefore granted.

---

[1] DeLorenzo also argues that he should be considered a "hospitality" employee, which he alleges also receives an exception to the general requirement that an employee earn minimum wage to bring a spread-of-hours claim.  However, the text of the DOL regulation states that the exception applies to "all employees in restaurants and all-year hotels," rather than the broader "hospitality" category.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d).

Regardless, DeLorenzo would not qualify under the DOL regulation's definition of "hospitality" employee either.  The regulation defines "hospitality industry" as "any restaurant or hotel, as defined herein," and the definition of "hotel" is "any establishment which as a whole or part of its business activities offers lodging accommodations for hire to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto."

### E.    Retaliation

Defendants also move to dismiss DeLorenzo's retaliation claims under the FLSA and the NYLL, arguing that DeLorenzo fails to allege that he engaged in a protected activity and, alternatively, that he does not connect such activity to his termination.  (Mem. at 27.)

Both the FLSA and the NYLL protect employees who file complaints alleging a violation of the respective statute from facing discrimination as a result of lodging such a complaint.  29 U.S.C. § 215(a)(3); N.Y. Lab. L. § 215(1).  "Because the FLSA and NYLL retaliation provisions are nearly identical, claims under both statutes are analyzed using the same framework." *Robinson v. De Niro*, 739 F. Supp. 3d 33, 74 n.9 (S.D.N.Y. 2023) (quotation marks omitted). Under both statutes, a plaintiff "must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Robinson*, 739 F. Supp. 3d at 75 ("The burden-shifting standard for a retaliation claim under the NYLL is the same as that under the FLSA.").

Defendants are correct that DeLorenzo fails to identify instances where he complained to any of the Defendants about a violation of either statute.  DeLorenzo cites two occasions on which he refused to work when asked, once over a weekend "due to an unforeseen conflict," and once over the summer because his mother was ailing and he did not want to travel abroad with the Coffeys.  (AC ¶¶ 205-07.)  However, DeLorenzo does not allege that he ever complained to Defendants that he was not being paid overtime, or that their employment practices were illegal

---

*See id.* §§ 146-3.1(a), (c)(1).  For the same reason DeLorenzo is not a restaurant employee, he is not a hotel employee either.

in some other way. While DeLorenzo was terminated after refusing to travel to Ibiza with the

Coffeys, he states that he told them "he could no longer work the long hours that the job

entailed." (*Id.* ¶ 207.) Such a statement is not protected activity under the FLSA or the NYLL,

because it is "not enough 'for a reasonable employer to understand [it] as an assertion of rights

protected by the statute and a call for their protection.'" *Jeanty v. Newburgh Beacon Bus Corp.*,

No. 17-CV-9175, 2018 WL 6047832, at *11 (S.D.N.Y. Nov. 19, 2018) (quoting *Kasten v.*

*Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

DeLorenzo does state that "[a]fter and because of his complaints of Defendants' unlawful

pay practices, Defendants retaliated against Plaintiff." (AC ¶ 211.) However, such a conclusory

statement, absent any specific instances or descriptions of these "complaints," is insufficient to

survive the Rule 12(b)(6) standard. *See Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.

2010) ("[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of

action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right

to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555) (emphasis in *Arista*)).

DeLorenzo's retaliation claims are thus dismissed for failure to state a claim.

### F.    Wage Notice and Statements

Defendants move pursuant to Rule 12(b)(1) to dismiss DeLorenzo's NYLL wage notice

and wage statements claims, arguing that DeLorenzo did not suffer a concrete injury and thus

lacks standing to bring such claims. (Mem. at 24.)

While Defendants are correct that "[a]n asserted informational injury that causes no

adverse effects cannot satisfy Article III," if a party can identify "downstream consequences

from failing to receive the required information," that resulted in "concrete harm," standing is

proper. *TransUnion*, 594 U.S. at 442 (quotation marks omitted). DeLorenzo has done more than

allege a purely informational harm. DeLorenzo alleges that because he never received a wage

notice and accurate wage statements calculating his hours worked and his resulting rate of pay, he did not have "relevant information he needed to determine whether he was being underpaid and by how much."  (AC ¶ 183.)  Because DeLorenzo's overtime claim and the ultimate amount he can recover depend on specific accounting of how many hours DeLorenzo actually worked, when, and at what rate, *see supra* Section III.B., he has suffered a concrete harm due to the Defendants' failure to furnish accurate statements tracking this work.

Defendants rely on *Montalvo v. Paul Bar & Rest. Corp.*, in which another court in this District adopted a magistrate judge's Report and Recommendation and held that a plaintiff who "pleads nothing more than the statutory violation and a demand for damages" lacks standing to bring a NYLL wage notice or statement claim.  No. 22-CV-1423, 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 13, 2023).  However, DeLorenzo has done more than allege a purely statutory harm:  He has alleged that without accurate documentation, he did not know the extent of his underpayment at the time he was being paid, as well as in the present litigation.  This is more akin to the plaintiffs in *Metcalf v. Transperfect Translations International, Inc.*, who alleged specific harm stemming from a lack of adequate wage notices.  No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023).  There, Judge Ramos explained the concrete injury, stating:

> Plaintiffs in this case are similar to the subset of *TransUnion* class members whose erroneous information *was* shared and who *did* have standing.  Plaintiffs here actually received inaccurate wage notices, which did not include a tabulation of hours and overtime, and which thereby prevented them from knowing whether, and to what extent, they had been underpaid during the nine-month period. . . . Accordingly, the injury suffered by plaintiffs is not merely hypothetical.

*Id.* (emphasis in original.)  To hold otherwise in *Metcalf* or in the case at hand would be to completely nullify the NYLL wage notice requirement in federal court.  That is, the injury that stems from a wage notice or wage statement violation will always appear, by its nature, to be an

informational injury.  However, if that lack of wage notice or statements delays a plaintiff from bringing suit, or decreases the amount he is able to collect due to incomplete accounting, that injury becomes a concrete one.

Defendants' motion to dismiss DeLorenzo's wage notice and statements claims for lack of standing is therefore denied.

### G.    Recordkeeping

Defendants move to dismiss DeLorenzo's recordkeeping claims, contending that neither the FLSA nor the NYLL provides for a private right of action that would enable an employee to sue his employer, or, alternatively, that DeLorenzo lacks standing to bring such claims because he did not allege a concrete injury from it.  (Mem. at 26.)

Neither statute, nor the regulations DeLorenzo cites, explicitly provide a private right of action for an employer's recordkeeping violation.  *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; N.Y. Lab. L. § 195(4); 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6.  Because of this, courts in this Circuit have consistently found that neither statute, nor supporting regulations, permit an employee to sue his employer for such a violation.  *See Garcia v. 2390 Creston Realty LLC*, No. 23-CV-1129, 2024 WL 2959254, at *5 (S.D.N.Y. June 11, 2024) (holding no private right of action for recordkeeping in FLSA); *Mota v. Abalon Exterminating Co., Inc.*, No. 22-CV-7602, 2024 WL 4202687, at *8 (S.D.N.Y. Sept. 16, 2024) (collecting FLSA cases); *Chan v. Big Geyser, Inc.*, No. 17-CV-6473, 2018 WL 4168967, at *10 (S.D.N.Y. Aug. 30, 2018) (holding no private right of action for recordkeeping in NYLL); *Jenkins v. Yellowstone Props., Inc.*, 17-CV-7764, 2019 WL 4392955, at *4 (S.D.N.Y. Sept. 12, 2019) (same).

In his opposition to Defendants' motion to dismiss, DeLorenzo provides no explanation as to why the Court should ignore the clear text of the statutes and regulations and hold

differently than the other courts in this Circuit.  To the contrary, he does not address Defendants' argument on this point.

The Court thus declines to infer private rights of action and dismisses DeLorenzo's recordkeeping claims.

### H.    Leave to Replead

DeLorenzo requests leave to amend his complaint a second time to replead any of his claims that the Court dismisses.  (Opp. at 17.)  When a party has already amended its pleading as of right, district courts are to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Though the Court is given discretion in deciding whether to grant a subsequent motion for leave to amend, "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.'" *United States ex rel. Maritime Admin. v. Continental Ill. Nat. Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)).  Some of the reasons to deny a motion for leave to amend include "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 182).

Several of DeLorenzo's claims would be futile to amend.  The Court dismisses the minimum wage and spread-of-hours claims because DeLorenzo was paid in excess of minimum wage, even calculating an hourly rate for his busiest weeks.  *See supra* Sections III.C., III.D. Paid $2,700 a week, DeLorenzo would have to allege that he worked over 180 hours a week in order for his hourly pay to fall below the City's minimum wage of $15.00.  *See supra* Section III.C.  Because there are only 168 hours in a week, no additional pleading could remedy DeLorenzo's claims.  His request to amend these claims is therefore denied.

Similarly, DeLorenzo's recordkeeping claims do not survive because the statutes and regulations he cites provide no private right of action for an employee to bring suit against his employer. *See supra* Section III.G. No amendment can change that. Thus, his request to replead those claims is also denied.

However, DeLorenzo's retaliation claims could benefit from repleading. Should he be able to allege specific instances in which he lodged a complaint about his lack of overtime pay, Defendants' failure to furnish wage notice or statements, or any other violation of the FLSA or the NYLL, and that such complaint led to his termination, he may amend his complaint to add these facts and reassert his retaliation claims, provided that any such amended complaint shall be filed within 14 days.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Defendants shall file an answer to the surviving claims within 14 days after the date of this opinion and order.

The Clerk of Court is directed to close the motions at Docket Numbers 20 and 39.

SO ORDERED.

Dated:  March 10, 2025
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge